IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ELDERBERRY OF WEBER CITY, LLC,<br><br>          *Plaintiff,*<br><br>v.<br><br>LIVING CENTERS – SOUTHEAST, INC., ET AL.,<br><br>          *Defendants.* | CASE NO. 6:12-cv-00052<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Elderberry of Weber City, LLC ("Elderberry") filed this action alleging one count of breach of a lease agreement against Living Centers – Southeast, Inc. ("Living Centers); FMSC Weber City Operating Company, LLC ("FMSC"); and ContiniumCare of Weber City, LLC ("Continium") (collectively, the "Continium Defendants"). Elderberry alleges a separate count for breach of contract against Mariner Health Care, Inc. ("Mariner"). Mariner has filed a Motion to Dismiss, Stay, or Transfer this action, and the Continium Defendants separately filed a Motion to Stay or Transfer. After briefing on those motions ended but before oral argument on the motions took place, Mariner filed a separate motion to dismiss for lack of personal jurisdiction. For the following reasons, I will deny all of Defendants' motions.

## I. BACKGROUND

  On November 8, 2000, Elderberry Nursing Home, Inc. entered into a Lease Agreement (the "Lease") with Living Centers. Elderberry acquired the property that was the subject of the Lease from Elderberry Nursing Home, Inc. on December 20, 2004. Living Centers operated a

nursing home on the property subject to the terms of the Lease. During the leasehold, Elderberry and Living Centers negotiated for the expansion of the nursing home to a 90-bed facility. In 2006, Elderberry and Living Centers agreed that the expansion would be funded by Elderberry, and they signed an amendment to the Lease (the "Lease Amendment"), which extended the lease term for ten years and provided for two five-year extension options. The Lease Amendment specifically stated that Elderberry acquired Elderberry Nursing Home, Inc.'s rights under the original Lease. As part of the negotiations of the Lease Amendment, Living Centers requested the ability to assign the Lease and Lease Amendment to Family Senior Care Holdings, LLC, or to other assignees. In exchange, Elderberry requested that Mariner, the parent company of Living Centers, execute a Lease Guaranty Agreement upon assignment of the Lease. When the parties signed the Lease Amendment, Boyd Gentry, Executive Vice President and Chief Financial Officer of Mariner, also signed a document entitled "Lease Guaranty" (the "Guaranty").

Living Centers assigned the Lease and the Lease Amendment to FMSC, an affiliate of Family Senior Care Holdings, LLC, sometime between July 2006 and April 2007. Improvements to the property funded by Elderberry were completed in April 2007, and Elderberry and FMSC agreed to begin the 10-year lease term on May 1, 2007. On September 9, 2011, counsel for FMSC sent a letter to Elderberry indicating that FMSC intended to assign the Lease to Continium. The letter also stated that "[n]otwithstanding this proposed assignment, it is intended that the Mariner Health Care, Inc. Lease Guaranty executed in conjunction with the First Amendment to Lease Agreement dated June 19, 2006, shall remain in full force and effect to guaranty the obligations of assignee ContiniumCare of Weber City, LLC." Continium began paying rent to Elderberry in November 2011 and continued to pay rent monthly as due under the

terms of the Lease and the Lease Amendment until March 2012.  Continium has not paid rent since March 2012.  On April 16, 2012, Elderberry sent written notice that the April 1, 2012, rent payment was past due.

On July 19, 2012, Elderberry received notification that the Virginia Department of Health & Human Services, Centers for Medicare & Medicaid Services ("VDHHS") was terminating Continium's Medicare Provider Agreement as a result of certain failures of Continium to operate the facility in conformance with VDHHS regulations, and on account of other deficiencies. Continium ceased all operations in the facility in August 2012.  Elderberry sent a letter to Living Centers, Continium, Mariner, and The Bernstein Law Firm on August 15, 2012, demanding payment of past-due rent and notifying all parties that if Elderberry did not receive payment within seven days of the notice, Elderberry would terminate the lease and pursue remedies in court if necessary.  On August 24, 2012, Elderberry sent another letter to the same four recipients terminating the lease.

One week later, on August 31, 2012, Mariner filed a declaratory judgment action against Elderberry in the U.S. District Court for the Northern District of Georgia, seeking a declaration that the Guaranty is void under Georgia law.  On September 27, 2012, Elderberry filed a motion to dismiss the Georgia action, asserting that the Northern District of Georgia lacked personal jurisdiction over Elderberry, that venue was improper, and that necessary parties were not joined. Elderberry requested in the alternative that the Georgia action be stayed pending this action in Virginia, which Elderberry filed in this court the same day.[1]  In Count One of the Complaint, Elderberry alleges that the Continium Defendants breached the Lease by their failure to pay rent and operate a nursing home in accordance with VDHHS regulations.  In Count Two, Elderberry

---

[1] As of March 20, 2013, the Northern District of Georgia had not issued any decision in the Georgia action.

alleges breach of contract against Mariner for failure to fulfill its alleged obligations under the Guaranty.

## II. DISCUSSION

### A. Mariner's Motion to Dismiss for Lack of Personal Jurisdiction

Nearly a month after the completion of briefing on Mariner's motion to dismiss, stay, or transfer, Mariner filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Under Rule 12(b), a defendant may assert certain specified defenses—including a lack of personal jurisdiction—by motion. Fed. R. Civ. P. 12(b)(2). Rule 12(g)(1) provides that a Rule 12 motion may be joined to any other motion under the rule, and Rule 12(g)(2) imposes a limitation on filing successive motions, requiring that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." In other words, "Rule 12(g) requires the defendant to consolidate any Rule 12(b) defenses he may have in a single pre-answer motion." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1351 (3d ed. 2004). For certain defenses, including lack of personal jurisdiction, a failure to raise the defense in the first pre-answer motion results in waiver of that defense. Fed. R. Civ. P. 12(h)(1)(A). The purpose of these rules is to eliminate unnecessary delay and prevent the piecemeal litigation of various defenses. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1384 (3d ed. 2004).

In this case, Mariner has filed two motions to dismiss. First, Mariner filed a motion to dismiss, stay, or transfer this action pursuant to 28 U.S.C. § 1404. After completion of briefing on that motion, Mariner filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Rule 12(h)(1) specifically states that a party waives a 12(b)(2) defense by

omitting to raise it in an earlier motion under Rule 12. But case law is divided as to whether a § 1404 motion is subject to the consolidation requirements of Rule 12(h). In *Sanghdal v. Litton*, 69 F.R.D. 641, 642 (S.D.N.Y. 1976), the court faced the same situation presented in this case: a defendant moved to dismiss for lack of personal jurisdiction after having previously moved for a change of venue pursuant to 28 U.S.C. § 1404(a). In *Sanghdal*, although the defendant's motion was made under § 1404(a) rather than Rule 12(b)(3), the court found that "the underlying facts to support a motion to change venue were essentially the same as the facts upon which he grounds his motion for lack of jurisdiction over the person, and were apparent to defendant upon the very commencement of suit." 69 F.R.D. at 642. As a result, the court held that the defendant had waived his personal jurisdiction defense by failing to raise it in his first motion. *Id.* at 642–43; *see also Silver v. Countrywide Realty, Inc.*, 39 F.R.D. 596, 598–99 (S.D.N.Y. 1966) (finding that defendants who raised an objection to personal jurisdiction for the first time in their reply brief on a motion to dismiss on the ground of forum non conveniens had waived the objection). By contrast, in *Dwyer v. Bicoy*, No. 08-cv-01195, 2008 WL 5381485, at *3–4 (D. Colo. Dec. 22, 2008), the court, addressing a similar set of facts, held that a defendant's motion to transfer venue pursuant to § 1404(a) was distinguishable from a motion to dismiss for improper venue pursuant to Rule 12(b)(3) and therefore was not subject to Rule 12(g)'s consolidation requirements. *See also Red Wing Shoe Company, Inc. v. B-JAYS USA, Inc.*, No. 2002 WL 1398538, at *2 (D. Minn. June 26, 2002) (stating that a "motion to transfer venue for the convenience of parties or witnesses or in the interests of justice, brought pursuant to 28 U.S.C. § 1404(a), is not a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure, so the waiver provision of Rule 12(h) is inapplicable."); *James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 n.1 (S.D. Ohio 1976).

I find that a motion to transfer venue is so similar to a motion to dismiss for improper venue that Rule 12(g)'s consolidation requirement applies, and I therefore agree with the courts in *Sanghdal* and *Silver* that a defendant who fails to raise an objection to personal jurisdiction in a motion to transfer venue has waived the objection. To hold otherwise would subvert the purpose of the consolidation rule. In this case, as in *Sanghdal*, the underlying facts Mariner cites to support its motion to dismiss for lack of personal jurisdiction are the same as the facts upon which he grounded his motion to dismiss, stay, or transfer venue, and were apparent to Mariner at the very commencement of suit. The significance of personal jurisdiction issues in this case were readily apparent to Mariner at the time it filed its motion to transfer venue since Elderberry had already contested personal jurisdiction in Georgia in the declaratory judgment action filed by Mariner. Moreover, Mariner's failure to object to personal jurisdiction in its first motion to dismiss resulted in precisely the type of delay the Rule 12(g) consolidation rule is intended to prevent, prolonging the briefing process and delaying the adjudication of the earlier motion. Because I find that Mariner waived any objection to personal jurisdiction by failing to raise the issue in its first motion to dismiss, I will deny Mariner's second motion to dismiss.

**B. Mariner's Motion to Dismiss Pursuant to the First-to-File Rule**

In its first motion to dismiss, Mariner asked that this Court dismiss this action pursuant to the "first-to-file rule" because before Elderberry filed this suit, Mariner had filed a declaratory judgment action in Georgia addressing the same issues raised in Count Two of Elderberry's Complaint. The first-to-file rule provides that "when multiple suits are filed in different federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Quesenberry v. Volvo Group North America, Inc.*, No. 109cv00022, 2009 WL 648659, at *3 (W.D. Va. Mar. 10, 2009) (citing *Allied–General Nuclear*

*Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982)). In general, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594–95 (4th Cir. 2004) (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). In addition, "[a]lthough the Fourth Circuit has not stated explicitly that special circumstances may warrant an exception to the first-to-file rule, it has implicitly recognized a special circumstances exception in cases involving procedural fencing or forum shopping." *Federated Mut. Ins. Co. v. Pactiv Corp.*, No. 5:09cv00073, 2010 WL 503090, at *3 (W.D. Va. Feb. 9, 2010) (internal citations and quotation marks omitted).

As these exceptions show, the first-filed rule is not absolute and "is not to be mechanically applied." *Quesenberry*, 2009 WL 648659, at *3. Because the "policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources . . . exceptions to the rule are common 'when justice or expediency requires.'" *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (quoting *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

In deciding whether "special circumstances" counsel against following the first-filed rule, district courts in the Fourth Circuit have often looked to whether circumstances suggest a race to the courthouse. *See, e.g.*, *Quesenberry*, 2009 WL 648659, at *3; *Samsung*, 386 F. Supp. 2d at 724; *Nutrition & Fitness*, 264 F. Supp. 2d at 360; *PBM Products, Inc. v. Mead Johnson & Co.*, No. 3:01CV199, 2001 WL 841047, at *2 (E.D. Va. Apr. 4, 2001). Courts also consider how far

each case has progressed. *See Quesenberry*, 2009 WL 648659, at *4 ("[T]he plaintiffs' argument that the first-to-file rule need not be applied when the first-filed case is no further developed than one subsequently filed is well-taken."); *Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) ("[C]ourts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial.") (citing *Brierwood Shoe Corp. v. Sears, Roebuck and Co.*, 479 F. Supp. 563, 567 (S.D.N.Y. 1979)). And in considering whether the balance of convenience weighs in favor of allowing the second-filed action to proceed, courts consider the same factors relevant to transfer of venue or forum non conveniens. *See Pactiv*, 2010 WL 503090, at *2 ("[T]he factors pertinent to the balance of convenience analysis are 'essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a).'") (quoting *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)). These factors include:

> (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) the possibility of viewing premises, if applicable; (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) factors of public interest, including the relative congestion of court dockets and a preference for holding a trial in the community most affected.

*Id.* at *3.

I conclude that the first-to-file rule should not be applied in this case. The overarching policy of the rule is to avoid duplicative or piecemeal litigation and conserve judicial resources. Given the relatively complicated relationships among the various parties and the long course of dealings related to the property, it makes more sense to consolidate all of the issues into a single suit to allow for a clearer understanding of who did what and when. Unlike the Georgia action, this case brings together all of the parties and all of the claims into a single suit, allowing for a

more efficient adjudication of the parties' rights.[2]  Consideration of the balance of convenience supports this conclusion.  While selecting one forum will obviously inconvenience one side at the expense of the other, this case centers on a lease of real property located in Virginia, owned by a Virginia resident, and governed by Virginia law.  Moreover, the vast majority of the conduct and transactions that gave rise to the dispute appear to have taken place in Virginia.  These geographical ties, considered along with concerns for judicial economy, demonstrate that the balance of convenience weighs in favor of permitting this Virginia action to move forward.

Other special circumstances also counsel against applying the first-to-file rule in this case.  The Georgia action has not advanced any further than this action.  And while Defendants accuse Elderberry of "classic forum shopping," Mariner's conduct also raises the specter of the type of anticipatory litigation that has led courts to decline to apply the first-filed rule.  Mariner filed a declaratory judgment action in Georgia only days after receiving notice of termination of the Lease, despite Elderberry's rather tenuous connection to that jurisdiction and the fact that the property, Lease, Lease Amendment, and most of the relevant conduct took place in Virginia.  In sum, permitting the Virginia action to go forward will enable the resolution of all of the issues as they relate to all of the parties in the forum where the bulk of activity leading to this suit took place.  I will therefore deny Mariner's motion to dismiss based on the first-filed rule.

### C.  Defendants' Motions to Transfer Venue

Mariner and the Continium Defendants have separately moved to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) or to stay this action pending the outcome of the Georgia action.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

---

[2] Transfer of this case to Georgia could theoretically accomplish the same result.  However, as discussed in the next section, I find that this case cannot be transferred to Georgia under 28 U.S.C. § 1404(a).

- 9 -

district or division where it might have been brought." Thus, in considering a § 1404(a) motion, "a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The burden is on the moving party to show that transfer to another forum is proper. *See General Creation LLC v. Leapfrog Enterprises, Inc.*, 192 F. Supp. 2d 503, 505 (W.D. Va. 2002).

Defendants have not met their burden of showing that Elderberry could have brought this action in the proposed transferee district, the Northern District of Georgia. "In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh*, 250 F. Supp. 2d at 630. As Elderberry points out, Defendants have not shown that the Northern District of Georgia can exercise personal jurisdiction over either FMSC or Continium, both of which are Delaware LLCs whose sole members are individuals resident in Florida. Defendants state that they expressly consent to jurisdiction in Georgia, but the Supreme Court has held that after-the-fact consent cannot satisfy § 1404(a)'s requirement that a suit "might have been brought" in the proposed transferee forum:

> If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum.

*Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (citation omitted); *see also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.3d 312, 315 (4th Cir. 1984) ("[E]ven consent to jurisdiction by a party

cannot convert a federal district into one in which a suit 'might have been brought' under § 1404(a), if venue and jurisdiction requirements were not met at the time the suit was first filed."); *Guzzetti v. Citrix Online Holdings GmbH*, No. 12-01152, 2013 WL 124127, at *3 n.2 (D. Del. Jan 3, 2013). Since Defendants have offered no evidence that FMSC or Continium would have been subject to personal jurisdiction in Georgia at the time Elderberry brought this suit, transfer of venue under § 1404(a) is impermissible.[3] Finally, because I find that it is more efficient to adjudicate all of the claims surrounding the Lease and the Guaranty together, I will deny Defendants' motions to stay this action pending resolution of the Georgia action.

### IV. CONCLUSION

For the foregoing reasons, I will deny Defendants' motions. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __20th__ day of March, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[3] Even if Elderberry could have brought this suit in Georgia originally, as I discussed in regard to Mariner's motion to dismiss pursuant to the first-filed rule, I find that the balance of convenience weighs in favor of allowing this action to proceed in Virginia, not Georgia.