| | |
|---|---|
| ELDERBERRY OF WEBER CITY, LLC, a Virginia limited liability company, | ) ) ) ) |
| *Plaintiff* | ) ) |
| v. | ) Case No.: 6:12-cv-0052 ) |
| LIVING CENTERS — SOUTHEAST, INC., a North Carolina corporation; FMSC WEBER CITY OPERATING COMPANY, LLC, a Delaware limited liability company; CONTINIUMCARE OF WEBER CITY, LLC, a Florida limited liability company; and MARINER HEALTH CARE, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) |
| *Defendants* | ) ) ) |

## REPORT AND RECOMMENDATION

In this breach of commercial lease and guaranty action, Plaintiff Elderberry of Weber City, LLC ("Elderberry"), received judgment in its favor on all claims and was awarded damages of $2,742,029.05. Elderberry now seeks an award of the attorneys' fees and expenses it incurred to enforce its rights under the lease agreement. Defendants Living Centers—Southeast, Inc., FMSC Weber City Operating Company, LLC, ContiniumCare of Weber City, LLC, and Mariner Health Care, Inc., (collectively "Defendants") oppose the motion for attorneys' fees and expenses. Having considered the record, the legal arguments submitted and the applicable law and pursuant to 28 U.S.C. § 636(b)(1)(B), I **RECOMMEND** that Elderberry's Motion for Attorneys' Fees be **GRANTED**, and that Elderberry be awarded Two Hundred Seventy Eight Thousand Eight Hundred Sixty Four and 12/100 Dollars ($278,864.12)

in attorneys' fees and expenses.

## I.

The facts of this case are fully set forth in the District Court's September 6, 2013 Memorandum Opinion awarding judgment to Elderberry. Dkt. No. 189. In brief, Elderberry entered into a Lease Agreement (the "Lease") under which Living Centers—Southeast, Inc. ("Living Centers") agreed to operate a long-term skilled nursing facility located in Weber City in Scott County, Virginia. During the leasehold period, the parties agreed to expand the nursing home, and negotiated an amendment to the Lease (the "Lease Amendment") to extend the lease term for ten years with two additional five-year extension options. As part of the negotiations of the Lease Amendment, Elderberry consented to allow Living Centers to assign both the Lease and the Lease Amendment to FMSC Weber City Operating Company, LLC and ContiniumCare of Weber City, LLC. Elderberry agreed in the Lease Amendment to permit the assignment of the lease upon the express condition that Mariner Health Care, Inc. ("Mariner"), the parent company of Living Centers, execute a Lease Guaranty Agreement (the "Guaranty") at the time of the assignment. Living Centers subsequently assigned the Lease, including the Lease Amendment, to FMSC Weber City Operating Company, LLC and ContiniumCare of Weber City, LLC.

Defendants stopped paying rent to Elderberry in March 2012, and all operations of the facility ceased in August 2012. On August 24, 2012, Elderberry sent a letter to Defendants terminating the Lease. On August 31, 2012, Mariner filed a declaratory judgment action in the U.S. District Court for the Northern District of Georgia contending that the Guaranty is void under Georgia law, and thus that Mariner has no liability to Elderberry under the Lease or the Guaranty (the "Georgia Action"). On September 27, 2012, Elderberry filed a motion to dismiss the Georgia Action and filed this action, alleging that Defendants Living Centers, FMSC and

ContiniumCare of Weber City, LLC breached the lease agreement and that Defendant Mariner breached the guaranty agreement. Defendants contested this action, contending that the Guaranty was not a legal and enforceable contract against Mariner, and that Living Centers did not properly assign the Lease to FMSC and ContiniumCare of Weber City, LLC. Additionally, ContiniumCare of Weber City, LLC filed a counterclaim against Elderberry for unjust enrichment.

The U.S. District Court for the Northern District of Georgia transferred the Georgia Action to this Court on July 15, 2013 for consolidation with the present action. The District Court held a three day bench trial, and on September 6, 2013, the Court entered judgment against all Defendants in favor of Elderberry on all counts, finding that the defendants Living Centers, FMSC and ContiniumCare of Weber City, LLC had breached the Lease and that Mariner was liable for damages under the guaranty. The Court then awarded judgment in favor of Elderberry against all defendants for the full amount of damages sought. Dkt. No. 190. Elderberry now asks the Court to award $329,089.57 for attorneys' fees and expenses, based on 1,143.45 hours of work for having prosecuted and defended its rights under the Lease. Defendants concede that the Lease contains a valid attorneys' fee provision, and that Elderberry is entitled to recover some amount of attorneys' fees for its time prosecuting this action under the Lease. Defendants object to Elderberry's attorneys' fee claim on several grounds, and ask the Court to award Elderberry a reduced amount.

## II.

The Lease allows Elderberry to recover reasonable attorneys' fees for "instituting, prosecuting, or defending any action to enforce or protect" its rights under the Lease. Dkt. No. 198–3. Specifically, the Lease states as follows:

In the event of any breach by the Lessee, the Lessor may immediately, or any time thereafter upon satisfaction of the notice provision stated herein, cure such breach for the account and at the reasonable expense of the Lessee.  If the Lessor at any time by reason of such breach is compelled or elects to pay any sum of money, or incurs any expenses, ***including reasonable attorneys' fees in instituting, prosecuting, or defending any action to enforce or protect the Lessor's rights hereunder***, such sums and expenses, together with the costs and damages, shall be deemed to be additional rent hereunder and shall be due from the Lessee to the Lessor on the same terms as provided for the payment of rent hereunder.

Dkt. No. 198-3, p. 9 (emphasis added).

A party seeking to recover attorneys' fees has the burden of proving *prima facie* that the fees sought are reasonable and were necessary. Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (Va. 1998).  To determine the reasonableness of claimed attorneys' fees and costs, "a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate." Id. citing Seyfarth, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd. P'ship, 253 Va. 93, 96, 480 S.E.2d 471, 473 (Va. 1997).[1]  "In addition, the professional skill and experience required by the case, the character and standing of the attorneys in their profession, whether the fee was an absolute or contingent one, the reasonableness of the hourly rates charged, the accuracy of the

---

[1] The factors considered by Virginia courts are substantially similar to the Johnson/Kimbrell's factors adopted by the Fourth Circuit for an award of attorneys' fees in civil rights actions. See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010) aff'd sub nom. Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship, 442 F. App'x 776 (4th Cir. 2011); Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974); Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978).  District Courts in the Fourth Circuit sitting pursuant to diversity jurisdiction vary as to whether they apply the Virginia law factors or Johnson/Kimbrell's factors, or a combination of both, in an attorneys' fee analysis. See id.; Western Insulation, LP v. Moore, 362 F. App'x 375, 380 (4th Cir. 2010); Key Gov't Finance, Inc. v. E3 Enterprises Inc., Civ. Action No. DKC 11-3489, 2014 WL 858424, at *6 (D. Md. March 4, 2014); ACL Realty Corp. v. .Com Properties, LLC, Civ. Action No. 7:07cv00124, 2007 WL 2900097, at *2 (W.D. Va. Oct. 3, 2007); Double K Properties, LLC. v. Aaron Rents, Inc., 1:03CV00044, 2003 WL 22697218, at *3 (W.D. Va. Nov. 14, 2003).  Given that this case arises in diversity and is governed by Virginia law, and the considerable similarity between the tests, I find it appropriate to apply the Virginia law factors in this case.

time billed, whether future services in connection with the case will be necessary, and 'other attendant circumstances' also impact the reasonableness of an award." <u>Double K Properties, LLC. v. Aaron Rents, Inc.</u>, 1:03CV00044, 2003 WL 22697218, at \*2 (W.D. Va. Nov. 14, 2003) (citing <u>Mullins v. Richlands Nat. Bank</u>, 241 Va. 447, 449, 403 S.E.2d 334, 335 (Va. 1991)). The court need not articulate a finding with regard to each of the factors, so long as the court notes the factors its finds relevant in deciding the reasonableness of requested attorneys' fees. <u>W. Square, LLC v. Communication Techs., Inc.</u>, 274 Va. 425, 434, 649 S.E. 2d 698, 703 (Va. 2007).

The parties agree that the attorneys' fee provision in the Lease is valid and enforceable and that the lease expressly provides that Virginia law governs the resolution of this claim. Mariner contested strongly at trial that it had no liability to Elderberry under either the guaranty or the Lease and has appealed the finding by the District Judge that it is liable under the guaranty for the tenants' damages. However, Mariner does not contend at this stage that it is not liable for some attorneys' fees incurred by Elderberry to enforce its rights against the tenants in this action.

Defendants concede that Elderberry's attorneys charged reasonable hourly rates. Elderberry's legal counsel consisted primarily of four attorneys from Spilman Thomas & Battle, PLLC (the "Spilman firm"): M. Mallory Mantiply ($300–$305 per hour), Mary Kathryn King ($250 per hour), Travis A. Knobbe ($200 per hour) and Carrie M. Harris ($170 per hour). The Court finds that these billing rates are reasonable given the geographic location of the litigation and the experience level of each attorney. <u>See</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984); <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175 (4th Cir. 1994).

Defendants do take issue with various other aspects of Elderberry's fee request, alleging that: 1) Elderberry is not entitled to recover attorneys' fees incurred to defend the Georgia

Action; 2) Elderberry's attorneys' fee motion request is procedurally defective because it failed to provide expert evidence in support of its alleged fees and costs; 3) Elderberry's attorneys' fee motion does not provide the requisite specificity to determine whether its fees and costs were reasonably and necessarily incurred in this action; and 4) Elderberry's time reports contain excessive and duplicative billing entries. Defendants request that the Court reduce the award sought by Elderberry in an "amount commensurate with its Motion for Fees' deficiencies." Dkt. No. 216.

### The Georgia Action

Elderberry seeks $82,567.50 in attorneys' fees related to defending the Georgia Action and having it transferred to Virginia and consolidated with this case. Defendants object to any award to Elderberry for fees relating to the Georgia Action, claiming that it was a separate and distinct case prior to its transfer, and does not fall within the attorneys' fee provision in the Lease. Elderberry contends that the plain language of the Lease provides for the recovery of attorneys' fees in the Georgia Action because the Lease Amendment and Guaranty are "part and parcel" of the Lease. Dkt. No. 219, p.3.

Neither the Declaratory Judgment Act, nor the Guaranty provide for the recovery of attorneys' fees. See 28 U.S.C. § 2201, Utica Lloyd's v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998). Thus, any attorneys' fees related to the Georgia Action that may be awarded must arise under the Lease, which allows the landlord to recover reasonable attorneys' fees for "instituting, prosecuting, or defending any action to enforce or protect the Lessor's rights hereunder." Dkt. No. 198-3, p. 9. The Lease also makes any attorneys' fees which are awarded payable as rent. Thus, the issue is whether Elderberry's defense of the Georgia Action and the effort by Mariner to avoid exposure under the guaranty was an action "to enforce or protect its rights under the

Lease."

The court looks to the plain meaning of the language in the Lease and gives that language its intended effect to determine whether the fees and expenses associated with the declaratory judgment action for the Guaranty are recoverable under the attorneys' fee provision. See Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 831 (Va. 1998). Clear and unambiguous contractual terms are construed according to their plain meaning. See Marriott Corp. v. Combined Props., Ltd. P'ship, 391 S.E.2d 313, 316 (Va. 1990). The court may not indulge in the exercise of creating a new contract and must read the contract in line with the parties' intent in drafting it, as manifested by the actual words written. Amos v. Coffey, 228 Va. 88, 92–93, 320 S.E.2d 335, 337 (Va. 1984); Double K Properties, LLC. v. Aaron Rents, Inc., 1:03CV00044, 2003 WL 22697218, at *2 (W.D. Va. Nov. 14, 2003).

In Double K Properties, the Court found that an attorneys' fee provision in a lease applied to a declaratory judgment action which involved the application of the Bankruptcy Code to a disputed provision of the lease. The landlord in Double K Properties brought the declaratory judgment action to prevent a tenant/assignee, who purchased the lease while the original tenant was in bankruptcy, from exercising an option to extend the lease term. The lease permitted the original tenant to exercise the option to extend the lease, but the landlord asserted that the option agreement did not extend to the assignee. The Court rejected the landlord's argument, holding that the Bankruptcy Code would permit the tenant/assignee to exercise the option to extend the lease for a new term. The landlord then objected to an award of attorneys' fees under the lease which allowed an award of fees "for any action arising . . . out of this Lease." The landlord argued that the declaratory judgment action involved an interpretation of the Bankruptcy Code and its application to the lease option, and thus, the case did not arise

under or relate to a breach of the lease. The Court held that the declaratory judgment action would not have existed were it not for the assignment provisions of the lease, and thus attorneys' fees and costs were available. Id. at *2.

In this case, the Lease Amendment to which the Guaranty is attached states,

> Tenant shall not be required to obtain Landlord's consent or approval for a one-time only assignment, sublease, or combination assignment and sublease of the Lease….provided that Tenant shall obtain for Landlord a Lease Guaranty from Mariner Health Care, Inc., in the form and content of the Lease Guaranty attached hereto as Exhibit 'E'.

Dkt. No. 198–4, p. 5. The plain language of the Lease Amendment manifests the parties' intent that the assignment provision was conditional upon the execution of the Guaranty by Mariner, making the Guaranty a bargained-for right under the Lease. The Georgia Action put the validity of the Guaranty at issue, leaving Elderberry no choice but to retain counsel to protect its rights under the Lease. Had Elderberry not participated in the Georgia Action, it was at risk that the Georgia court could eliminate its right to recover under the Lease from Mariner. Consequently, I find that Elderberry was required to defend the Georgia Action adjudicating the validity of the Guaranty to "enforce or protect" one of Elderberry's rights under the Lease.

Mariner filed the Georgia Action to avoid liability under the Guaranty and its provision that Mariner "hereby guarantees unto Landlord the full and prompt payment of the rent and all other sums and charges payable by Tenant under the Lease." The fees incurred to defend the Georgia Action and have it transferred to this Court are deemed additional rent to be paid under the same terms as provided for the payment of rent in the Lease. Although the defendants/tenants did not file or prosecute the Georgia Action, they are liable for the payment of rent under the terms of the Lease and Lease Amendment. As such, they are liable for the attorneys' fees incurred by Elderberry in that the Georgia Action as the award of those fees are

considered unpaid rent and are due under the Lease and Lease Amendment.  Mariner is liable as having guaranteed the full and prompt payment of rent.

**Expert Testimony**

Defendants contend that Elderberry's fee request is procedurally defective because Elderberry must support its claim with expert testimony that its fees were reasonable and necessary.  Dkt. No. 216, p. 3.  Elderberry has submitted a) the Declarations of attorneys Mantiply and King, stating the attorneys' fees sought, the billing rates used, and their belief that the time spent was reasonable and necessary; b) the Engagement Agreement between Elderberry and the Spilman firm; c) a summary of the attorneys' fees incurred, organized by task; d) a list of the expenses paid by the law firm and those paid by Elderberry; and e) a copy of the Lease Agreement and the First Amendment to Lease Agreement. Dkt. No. 198, Ex. 1–4. Elderberry also submitted the monthly billing invoices that it paid for the legal services rendered and expenses incurred in this matter.  C. Lynch Christian, III, the manager of Elderberry, gave a declaration that he believes that the attorneys' fees charged were reasonable and necessary.[2] Dkt. No. 219-1, p.1–6.

Elderberry bears the burden of proving that its claimed attorneys' fees were reasonable and necessary. Chawla, 255 Va. at 264.   The Supreme Court of Virginia has held that while expert testimony is ordinarily necessary to assist the fact finder in determining the reasonableness of attorneys' fees, such testimony is not required in every case. Seyfarth, 253 Va. at 96–97, 480 S.E. 2d at 473.  "An attorney who seeks to recover legal fees from a present or former client must establish, as an element of the attorney's *prima facie* case, that the fees

---

[2] At the oral argument hearing on this motion, the Court raised the option of holding an evidentiary hearing to allow Elderberry to present expert testimony with regard to its attorney fee claim.  The parties subsequently filed briefs on the issue, both declining the opportunity to hold an evidentiary hearing on attorneys' fees.  See Dkt. Nos. 230, 231. The Court agrees that the matters at hand have been fully briefed and argued, and that expert testimony is unlikely to further elucidate the issues.

charged to the client are reasonable. The attorney, however, is not required to prove the reasonableness of the fees with expert testimony in all instances." Id. at 96, 480 S.E.2d at 473. The Seyfarth Court found that expert testimony was not necessary where other evidence set forth the hourly billing rates, the nature of the legal services provided, the complexity of those services, and that the services were necessary and appropriate. Id.; see also Tazewell Oil Co., Inc. v. United Virginia Bank/Crestar Bank, 243 Va. 94, 112, 413 S.E. 2d 611, 621 (Va. 1992) (Expert testimony is not necessary where plaintiff provided detailed time records and affidavits of attorneys regarding the reasonableness of its rates).

In this case, as in Seyfarth, the evidence submitted by Elderberry sets forth the attorneys' hourly billing rates, the nature of the legal services provided, the complexity of those services, and declarations by the manager of Elderberry and two of the billing attorneys that the fees sought were reasonable and necessary. Consequently, Elderberry provided sufficient documentation for the Court to determine whether its services were necessary and appropriate in this case, without requiring expert testimony.

### Block Billing

Defendants also assert that Elderberry provided insufficient documentation to the Court to accurately determine the reasonableness of the time billed by its counsel. Specifically, Defendants point to Elderberry's practice of "block billing," or combining multiple tasks into the same billing entry. Elderberry provided over one hundred pages of monthly invoices to the Court; however, Defendants claim that Elderberry's practice of block billing deprives the Court of the specificity necessary to establish the reasonableness of the hours billed. Elderberry counters that the provided time entries are sufficiently specific for the Court's purposes.

Virginia courts have recognized that although block billing is a common, efficient and accepted practice, it is often at odds with the burden of the party seeking attorneys' fees to make a *prima facie* case of reasonableness. See Northern Virginia Real Estate, Inc. v. Martins, 80 Va. Cir. 478, at*6 (Va. Cir. Ct. June 29, 2010); Tureson v. Open System Sciences of Virginia, Inc., 86 Va. Cir. 473, at *1 (Va. Cir. Ct. May 31, 2013). In Martins, the court found that block billing is not unreasonable *per se*, but that a court must employ its discretion to determine whether tasks are listed in a manner that provides a rational summary of the time spent on various projects. [3] Id. Likewise, courts in this circuit have routinely held that "block billing" does not provide the court with a sufficient breakdown to support an attorneys' fee request. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006); see also Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012); McAfee v. Boczar, 906 F. Supp. 2d 484, 498 (E.D. Va. 2012) vacated and remanded on other grounds, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014) ("The practice of 'block billing' has been generally disfavored in federal courts across the country and has often led to a reduction in attorney's fees.") As the Court explained in Project Vote, "[w]hile perhaps 'block billing' is not prohibited, it simply does not provide the court with the sufficient breakdown to meet [the applicant's] burden to support its fee request in specific instances." Id. at 716. The Court noted, "[t]he court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Id. at 717. See also Guidry, 442 F. Supp. 2d at 294 ("Indeed, fee claimants must submit documentation that reflects 'reliable contemporaneous

---

[3] The court in Martins noted that the block billing issue was one of first impression in Virginia. Id. The test enunciated in Martins is conceptually analogous to the block billing analysis used by the courts in this circuit; accordingly, I will rely on both in my analysis.

recordation of time spent on legal tasks that are described with reasonable particularity,' sufficient to permit the Court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'") (citing EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988)).

Accordingly, Courts have found that "[l]umping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry, at 294. Courts reduce the fee award in such circumstances by either identifying specific hours that are not sufficiently documented or by reducing the overall fee award by a fixed percentage based on the trial court's familiarity with the case, its complexity, and counsel involved. See Project Vote, 887 F. Supp. 2d at 716; McAfee, 906 F.Supp.2d at 497–500; Guidry, 442 F. Supp. 2d at 294. In Project Vote, the Court noted that counsel's time logs reported the entries with "no breakdown of how the time was spent among often as many as four or five distinct tasks," and thus, "[i]n light of the inexact documentation and the resulting inability of the court to properly assess the reasonableness of the time requested," the court applied a fixed percentage reduction of ten percent to the fee award. Id. at 716.

Here, Elderberry correctly contends that block billing is acceptable *unless* it prevents the court from assessing reasonableness. Thus, the issue is not whether the Court classifies the Spilman firm's timekeeping as "block billing" but whether Elderberry has satisfied its burden of providing the Court with evidence from which the Court can assess the reasonableness of the time entries.

The Spilman firm's time sheets reflect a consistent practice by all billing attorneys of combining multiple tasks into a single time entry. Often, the attorneys bill an entire day's worth

of tasks in a single time entry.  For example, on June 14, 2013, attorney Mantiply billed 7.5 hours for "E-mail exchange with Lori Thompson regarding status, scheduling hearings and possible mediation; telephone conference with L. Christian; e-mail exchanges with L. Christian; receive and begin review of new Georgia and Virginia court filings." Dkt. No. 219–1, p. 68.  On July 24, 2013, attorney Knobbe billed 8.3 hours for a variety of tasks, including drafting a motion for sanctions, preparing an affidavit, compiling exhibits, reviewing a decision from Judge Moon, conferring with the client, and preparing for a hearing. Dkt. No. 219–1, p. 82.  At one point attorney Mantiply recorded the same billing entry four days in a row,"[r]eview pleadings/orders; briefing; editing; internal and external telephone conferences," for a total of 7.5 hours each day. Dkt. No. 291-1, p. 68–69.  This type of time entry does not give the court sufficient information to ascertain how much time was spent on each task, and thus, to determine the reasonableness of the time billed for that day.  As the McAfee court stated,

> This approach ignores the possibility that an attorney might devote reasonable time to one reasonably reimbursable request and spend an unreasonable amount of time on another reasonably reimbursable task, and that, as a result, a fee request must thereby be reduced. Such a result would be required by the command that the Court should not award fees for hours that are "excessive, redundant, or otherwise unnecessary." [Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)]. Where a fee applicant has engaged in block billing, the adversary and the Court are disadvantaged in assessing the validity [of] the hours expended, even after concluding that the tasks on which those hours were expended appear to be necessary tasks.

McAfee, 906 F. Supp. 2d at 499 vacated and remanded on different grounds, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014).

Given that almost all of the Spilman firm's time records combine multiple tasks into single time entries, it is not feasible for the Court to attempt to identify specific hours that are not sufficiently documented.[4]  Defendants urge the Court to disallow all time submitted in block

---

[4] The monthly invoices reflect the time spent on each task within a billing entry on only two occasions. See Dkt. No.

billing.  However, Defendants do not contend that any of the tasks are unnecessary.  Thus, disallowing all of this time would give Defendants an inappropriate windfall and allow them to avoid paying for legal work which was necessary in this case.  Rather, case law instructs that the appropriate solution is to apply a fixed percentage reduction to the attorneys' fee award. See SunTrust Mortgage, Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 778 (E.D. Va. 2013) (reducing the hours claimed by twenty percent due to block billing, unintelligible and inconsistent time entries); McAfee, 906 F. Supp. 2d at 500 (reducing the hours claimed by ten percent due to block billing); Project Vote, 887 F. Supp. 2d at 717 (reducing total fee request by ten percent due to block billing); Wolfe v. Green, CIV. A. 2:08-01023, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (reducing total fee award by ten percent to account for counsels' practice from time to time of block-billing).  I find this a reasonable approach and recommend a 15% reduction of the total amount of attorneys' fees awarded to account for block billing by the Spilman firm throughout its representation of Elderberry in this matter.  I apply this fixed reduction to the fee award based upon my knowledge of the complexity and extent of the discovery conducted and having carefully reviewed the entire docket to understand all of the issues in the case.

### Duplicative, Excessive Billing Entries

Defendants assert that the Spilman firm's invoices contain excessive and duplicative billing entries, such as charging for multiple attorneys to attend hearings, as well as charging for ministerial and non-compensable tasks. Dkt. 216, p. 7–8.  Specifically, Defendants allege that Elderberry's counsel is not entitled to bill 2.6 hours for resolving scheduling issues with Defendants regarding trial and hearing dates, because they are non-compensable, administrative tasks.

219-1,  p. 45, 70.

When reviewing attorney fee petitions, the Supreme Court has recognized that there is a gray area of tasks that might appropriately be performed either by an attorney or a paralegal. Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n. 10 (1989). Likewise, the Fourth Circuit has noted that there is no single, correct way to staff every lawsuit, and sometimes it is more economical and efficient for attorneys to do 'non-legal' work. Spell v. McDaniel, 824 F.2d 1380, 1401–02 (4th Cir.1987) (considering objection to hours spent by attorneys on serving subpoenas, photocopying documents, and filing pleadings); see also Campbell v. Astrue, 3:09-CV-1562-TLW-JRM, 2011 WL 2633687, at * 2 (D.S.C. July 6, 2011) (preparing the summons, complaint, and civil cover sheet and reviewing and filing the plaintiff's brief are tasks that an attorney might appropriately perform). Here, resolving scheduling issues with opposing counsel falls within the gray area of tasks that might appropriately be performed by either an attorney or non-attorney. It may well have been more economical and efficient for Elderberry's attorneys to handle these specific issues, rather than delegate them to an administrative assistant. Thus, I conclude that the 2.6 hours to which Defendants object are compensable.

Defendants also object to unreasonable duplication of work by Elderberry's attorneys, specifically instances where multiple attorneys participated in hearings, as well as having multiple attorneys review and draft the same documents. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434. However, "there is nothing inherently unreasonable about a client having multiple attorneys," especially in a complex civil case. McAfee, 906 F. Supp. 2d at 501(quoting Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988)) (internal quotation marks omitted). When reviewing the hours

sought, the court must focus on the reasonableness of the division of responsibility between counsel.  Reduction of hours is warranted only if counsel unreasonably duplicate each other's work. See Project Vote, 887 F. Supp. 2d at 714.   In this case, I find that Elderberry's counsel generally divided the work to be performed in such a manner as to avoid unreasonable duplication.

Elderberry's legal team consisted of four attorneys, but only two of those attorneys, Mantiply and Knobbe, billed a large majority of the approximately 1,100 hours claimed.[5] Mantiply and Knobbe were primarily responsible for conducting legal research, preparing pleadings and briefs, conducting discovery, and participating in hearings and trial. Mantiply and Knobbe both attended hearings and other court appearances; however, a majority of the hearings were telephonic and did not require travel.[6]  It further appears from the billing invoices that only one attorney billed time for attending each deposition. Dkt. No. 219-1, p. 55.

Having reviewed the division of labor between Elderberry's attorneys, and considering the complexity of the case, and the dual forums involved, it was not unreasonable to have two attorneys primarily handling the file, including attending court hearings and trial.  Moreover, any assertion by Defendants that Elderberry's attorneys spent an unreasonable amount of time on any one discrete task, or unreasonably duplicated efforts, is accounted for by the fifteen percent reduction for the block billing.

## Expenses

Elderberry seeks $19,681.57 in litigation expenses,[7] which includes expenses incurred

---

[5] King is based in North Carolina, and performed around 200 hours of work on the Georgia Action, and Harris is an associate who provided less than 20 hours of research and writing assistance.

[6] On July 12, 2013, Elderberry was represented by three attorneys for a telephonic hearing in the Georgia Action. Dkt. No. 219–1, p. 80.

[7] In its initial brief in support of this motion, Elderberry claimed total expenses of $20,072.71; however, the exhibits

by the Spilman firm on Elderberry's behalf, as well as those directly incurred by Elderberry. Dkt. No. 197, p. 2. Defendants object to Elderberry's bill for legal expenses, asserting that certain expenses should be disallowed, and that the court should reduce the total amount of expenses to $7,032.40. Specifically, Defendants claim that: 1) Elderberry did not provide a sufficient basis for recovery of its expenses, including postage, phone calls, legal research, facsimile, mileage, meals, parking, FOIA fees, legal research expenses, rooms for trial, and witness expenses; and 2) Elderberry's copying charges are voluminous and unsupported.

Defendants first raise a general objection as to Elderberry's expenses, claiming that Elderberry did not provide a sufficient basis for their recovery, and they do not reflect "taxable costs" under either Virginia law or the Lease. Defendants misconstrue Elderberry's request for litigation expenses as a request for the court to tax costs. Dkt. No. 216, p. 9. The concept of taxable costs is more limited than litigation expenses. "Taxable costs are limited to relatively minor, incidental expenses as is evident from [28 U.S.C.] § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2006, 182 L. Ed. 2d 903 (2012). Litigation expenses, however, include all the expenditures actually made by a litigant in connection with the action. See 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2666 (3d ed. 2013).

The Lease allows Elderberry to recover reasonable attorneys' fees and "any expenses." Litigation expenses are recoverable only to the extent they "are reasonable in amount and reasonably incurred." Owen v. Shelton, 221 Va. 1051, 1056, 277 S.E.2d 189, 192 (Va. 1981). Thus, Elderberry is entitled to recover those reasonable costs and expenses associated with this case that it can establish with a reasonable degree of specificity. W. Square, L.L.C. v. Commc'n

attached to its reply brief only support expenses of $19,681.57. Dkt. No. 219-1, p.107.

Technologies, Inc., 274 Va. 425, 436, 649 S.E.2d 698, 703 (Va. 2007).

Defendants also object to Elderberry's $7,314.25 copying costs as being unreasonably high and unsupported.[8] Initially, it strikes the Court that over seven thousand dollars is an unusually large amount of copy charges. Such a substantial figure may well be necessary and reasonable, given the large volume of contested legal issues and extensive discovery performed in this case. However, it is difficult for the Court to determine the reasonableness of Elderberry's copying charges because the Spilman firm's monthly invoices do not provide the price per copy and/or number of copies made. Rather, the invoices simply list the date, "copies," and a monetary figure, ranging from $0.25 to $538.25 per charge. See e.g., Adkins v. Crown Auto, Inc., 4:04 CV 00042, 2005 WL 2563028, at *5 (W.D. Va. Oct. 11, 2005) (Itemized list of copies that included date, the documents copied, the number of copies made per day, and the charge per copy is sufficient documentation to support recovery of copying charges.)

This Court recently ruled, consistent with prior decisions, that copy charges of ten cents per page is reasonable for purposes of taxation of costs under 28 U.S.C. § 1920. McAirlaids, Inc. v. Kimberly-Clark Corp., Civ. Action No. 7:12-cv-578, 2014 WL 495748, at *12 (W.D. Va. Feb. 6, 2014). Elderberry did not give the Court a reason to deviate from that finding in this action, nor did it identify whether its copying costs were more than ten cents per page. Elderberry also did not provide a basis for the Court to determine the number of copies necessary in this case. The Court is aware that the parties exchanged significant pretrial discovery and documents in this case. Given the Court's prior experience, and applying a copying charge of ten cents per page, I find a total copying charge of $3,500.00, which would allow for copying 35,000 pages, to

---

[8] Neither Elderberry nor the Spilman firm sets forth the total amount of expenses for copying charges in the documentation submitted to the Court. Rather, they provide nine pages of copy charges, single-spaced, in their summary of expenses, with no overall tally. The individual copy charges are also set forth in each monthly invoice. For purposes of this opinion, the Court will accept Defendant's assertion that the copy charges total $7,314.25.

be abundantly reasonable. I recommend that Elderberry's expenses for copies be reduced by $3,814.25 to a total of $3,500.00. Thus, I recommend an award of expenses totaling $15,867.32.[9]

Defendants do not raise specific objections to Elderberry's additional litigation expenses, and having reviewed the Spilman firm's monthly invoices, as well as the tally of expenses paid directly by Elderberry, I find the remaining expenses for postage, phone calls, legal research, facsimile costs, filing fees, mileage, meal expenses, parking, service of process charges, witness fees and transcript costs to be reasonable and necessary.

## Overall Reasonableness

Having addressed Defendants' discrete objections to Elderberry's attorneys' fee request, the Court must also review the fees sought by Elderberry for overall reasonableness. Elderberry's attorney fee request of $329,089.57 is substantial. However, considering the factors set forth by the Virginia Supreme Court, and with the adjustments noted above, I find that the fees sought by Elderberry are reasonable given the circumstances of this case.

This contract action involved multiple defendants, multiple contracts, multiple defenses, and even multiple forums. Elderberry filed and/or defended a myriad of motions throughout this litigation, including motions to dismiss, stay or transfer, quash, enter a protective order, compel, alter judgment, award partial summary judgment, award summary judgment, bifurcate, seal, award sanctions, continue the trial date, stay notice of appeal, and approve supersedeas bond. Elderberry participated in several telephonic hearings with the Magistrate Judge, as well as three open court hearings on various motions, and a three-day trial with the District Judge. See Va. Elec. & Power Co. v. Mitchell, 167 S.E. 424, 425 (Va. 1933) (holding reasonableness of

---

[9] Calculated as follows: litigation expenses of $19,681.57 less $3,814.25 for disallowed costs= $15,867.32.

attorneys' fees to be assessed based on "the work involved in the preparation and presentation of the case").

While Elderberry was prosecuting this action, it was also simultaneously defending the Georgia Action for a period of eleven months. The cases were ultimately consolidated, and culminated in a three day bench trial. Significantly, the Court entered judgment in favor of Elderberry on all counts, and awarded the full amount of damages sought, a total of more than 2.7 million dollars, along with pre- and post-judgment interest.

The Court also considers the affidavit of C. Lynch Christian, III, the manger of Elderberry, which notes his familiarity with business litigation, Elderberry's prior relationship with other law firms, Elderberry's decision to hire the Spilman firm, his opinion of the Spilman firm's qualifications, his opinion that the fees billed to and paid by Elderberry were necessary and reasonable, and his satisfaction with the results obtained. Dkt. No. 219-1, pp. 1–6. See Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 178 (4th Cir. 1994) (Court considered the rates charged to and actually paid by the client, and the client's belief that the rates were reasonable.); Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir. 1993) ("[T]he best measure of the cost of an attorneys' time is what that attorney could earn from paying clients.")

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. at 435. In this case, Elderberry prevailed on every disputed claim before the Court and achieved a substantial verdict. The only factor weighing against Elderberry's full recovery of attorneys' fees is the lack of specificity of the Spilman firm's time entries. I previously accounted for that issue by applying a fifteen percent reduction to the total attorneys' fee award, and reduced the copying charges sought. With those

modifications, I find it reasonable and sufficient to award attorneys' fees and expenses of $278,864.12.[10]

## <u>CONCLUSION</u>

For the foregoing reasons, I hereby **RECOMMEND** that Elderberry's Motion for Attorneys' Fees be **GRANTED**, and Elderberry be awarded attorneys' fees and expenses in the amount of **$278,864.12.**

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: June 25, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[10] Calculated as follows: attorneys' fees of $309,408 - $46,411.20 (15%) = $262,996.80 in total fees + expenses of $15,867.32 = $278,864.12.